UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DISTRICT

**ANDREW B. SHEETS**,                    )
                                         )
      Plaintiff,                   )    CASE NO.:
                                         )
vs.                                      )
                                         )
**CITY OF PUNTA GORDA, FLORIDA,**        )
a Florida municipal corporation          )
                                         )
      Defendant.                   )
_____ /

## <u>COMPLAINT FOR DECLARATORY JUDGMENT,</u><br><u>INJUNCTIVE RELIEF AND DAMAGES</u>

Plaintiff, ANDREW B. SHEETS, file this Complaint against the CITY OF PUNTA GORDA, FLORIDA, pursuant to 42 U.S.C. §1983, seeking a judgment declaring that §11.5(z), and the associated definitional sections of the Punta Gorda Sign Ordinance, are unconstitutional under the First and Fourteenth Amendments to the United States Constitution. Plaintiff further prays for an award of damages for the losses occasioned by the unconstitutional application of the City's law against the Plaintiff.

## <u>JURISDICTION</u>

1.     This suit is brought pursuant to 42 U.S.C. §1983:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

2.     This Court has "Federal Question" jurisdiction pursuant to 28 U.S.C. §1331 to hear cases arising under the Constitution of the United States, under 28 U.S.C. §1343(3) to redress the deprivation under color of state law of any right, privilege or immunity secured by the Constitution, and under 28 U.S.C. §1343(4) to secure equitable or other relief for the protection of civil rights.

3.     The Court has the authority to issue declaratory judgments and permanent injunctions pursuant to 28 U.S.C. §§2201 and 2202, and Rule 65, Fed.R.Civ.P.

4.     The Court may enter an award of attorney's fees pursuant to 42 U.S.C. §1988.

5.     This Complaint seeks declaratory and injunctive relief to prevent violations of the Plaintiff's rights, privileges and immunities under the Constitution of the United States and Title 42 U.S.C. §§ 1983 and 1988, specifically seeking redress for the deprivation under color of state statute,

ordinance, regulation, custom or usage of rights, privileges, and immunities secured by the Constitution and laws of the United States. The rights sought to be protected in this cause of action arise and are secured under the First and Fourteenth Amendments to the Constitution.

6.    This action seeks a judicial determination of issues, rights and liabilities embodied in an actual and present controversy between the parties involving the constitutionality of certain Ordinances and policies of the Defendant. There are substantial *bona fide* doubts, disputes, and questions that must be resolved concerning the Defendant's actions taken under color and authority of "state" law and procedures, in violation of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

## VENUE

7.    Venue is proper in the Middle District of Florida, Fort Meyers Division, since the laws and policies complained of are those of Punta Gorda, Florida, which is within the district and geographical area assigned to the Fort Myers Division.

## PARTIES

8.    Plaintiff ANDREW B. SHEETS, is an individual, *sui juris*, who resides within the municipal limits of Punta Gorda, Florida.

9.     Defendant, City of PUNTA GORDA, is a Florida municipal corporation, organized and operating under the laws of the State of Florida.

## COLOR OF STATE LAW

10.    As a political subdivision of the State of Florida, organized and operating under the laws of the State of Florida, the City of PUNTA GORDA and its governing officials were, and are, acting under color of state law and authority in adopting and enforcing the subject Ordinance. The enforcement and threatened enforcement of the subject Ordinance against Plaintiff is an action taken under color of state law and constitutes state action within the meaning of 42 U.S.C. §1983.

11.    The ordinances, actions and policies of Defendant PUNTA GORDA have deprived and will continue to deprive Plaintiff of rights guaranteed and protected by the First and Fourteenth Amendments to the United States Constitution.

## PLAINTIFF'S SPEECH ACTIVITIES

12.    Plaintiff is a political activist committed to challenging "The Establishment" as well as public officials with whom he disagrees.

13.    Plaintiff frequently engages in public protests and demonstrations, most often within the City of Punta Gorda.

14.    On some occasions, Plaintiff protests and demonstrates in a group with other like-minded individuals. At other times, Plaintiff carries out his public protests by himself.

15.    Plaintiff regularly makes use of profanity in the context of his political activities. He does so specifically because expletives draw the attention of potential audience members and make his speech more effective and more memorable.

16.    Plaintiff's political activism takes many forms, including street protests, recording the public actions of police and code enforcement officers, and displaying signs which reflect his political beliefs.

17.    On some occasions, Plaintiffs displays political signs which so not utilize conventional signage and have no physical presence. Instead, Plaintiff makes use of a laser projector which displays a changeable message using bright light.

18.    The laser projector is not dangerous, does not present any threat to the eyes of persons observing the light and was not, in any case, projected towards anything other than a building.

19.    During his protests, City law enforcement officers and code enforcement officers have oftentimes told Plaintiff that his particular

messages – whether projected, portrayed on shirts or on hand-held poster boards – are unlawful because they include profanity or are obscene.

20.    Plaintiff has been informed by City law enforcement officers that it is lawful to display a sign which says "F*CK JOE BIDEN" but that a sign which reads "FUCK JOE BIDEN" is illegal and must be covered or removed.

## PUNTA GORDA SIGN CODE

21.    The City of Punta Gorda Land Development Code (Chapter 26 of the Punta Gorda Code of Ordinances) includes comprehensive regulations of signs and signage within the City.

22.    On June 2, 2021, the City enacted Ordinance 1966-2021 which substantially amended the former sign code because "it has been determined that Chapter 26, Article 11, Sign Standards, Punta Gorda Code, should be updated following the decision of the U.S. Supreme Court in Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015)." *See*, ORD. 1966-2021, Preamble. A copy of Ordinance 1966-2021 is attached as Exhibit "1" to this Complaint.

23.    Ordinance 1966-2021 was subsequently codified as Chapter 26, Article 11, §§11.1, *et seq.* of the Punta Gorda Code of Ordinances (hereinafter the "Sign Ordinance"). A copy of the codified Sign Ordinance is attached as Exhibit "2" to this Complaint.

24.    The Sign Ordinance defines a sign as:

(56)  Sign means any device, structure, item, thing, object, fixture, painting, printed material, apparel and accoutrements, or visual image using words, graphics, symbols, numbers, or letters designed or used for the purpose of communicating a message or attracting attention.

Section 11.4(a)(56).

25.    Plaintiff's projected messages are considered to be "signs" under the Sign Code.

26.    The Sign Code generally separates signs into one of three categories:

(1)    Those which can be displayed without a permit [*see*, §§ 11.2(c), 11.8];

(2)    Those which can be displayed, but only with a permit [*see*, §11.7];[1] and

(3)    Signs or sign messages which are prohibited in all circumstances [*see*, §11.5].

_____

[1]  The permit requirement appears in §11.7(a) and reads as follows:

(a)    Permit Required. Except as otherwise provided in this Article, no person shall erect, alter, change the sign face, change the sign location, change the size, or replace any sign without first receiving an approved sign permit from the City pursuant to the requirements provided herein.

27.    Among those signs which are flatly prohibited in all circumstances are signs with an "obscene" or "indecent" message or a message which constitutes "fighting words":

**Section 11.5 Prohibited Signs**

Unless otherwise provided for in this Article, no person shall erect, display, wear, alter, maintain, or relocate any of the following signs in the City and such existing signs must be removed:

….

(z)    Any sign which contains obscene language or graphics; and any sign containing fighting words or indecent speech which is legible from any public right - of - way or within any public space, and which can potentially be viewed by children under the age of 17. This provision includes signs or flags in or on any vehicle, vessel or on any apparel and accoutrements.

28.    The Sign Ordinance includes specific definitions for "Fighting words", "Indecent speech" and "Obscene":

**Section 11.4 Definitions**

(a)    The following words, terms, and phrases, when used in this Article, shall have meanings ascribed to them in this Section, except where the context clearly indicates a different meaning. All words and terms not specifically defined in this Section shall be given their common, ordinary meanings, as the context may reasonably suggest, unless defined in Chapter 26, Article 19, Section 19.2, Punta Gorda Code, in which case said definition may be used, if appropriate to the context. The reference for common, ordinary meanings shall be the online version of the Merriam - Webster dictionary found at www.merriam - webster.com.

….

(20)  *Fighting words* are words or graphics which by their very utterance have a direct tendency to incite immediate breach of the peace by the person to whom, individually, the remark is addressed. The test is whether persons of common intelligence would understand such words would be likely to cause an ordinary addressee to fight. Fighting words include, but are not limited to, defamatory remarks made to private citizens and epithets based on the addressee's race, color, religion, disability, national origin, ethnicity, or sex.

…

(32)  *Indecent speech* is language or graphics that depict or describe sexual or excretory activities or organs in a manner that is offensive as measured by contemporary community standards.

…

(42)  *Obscene* means language or graphics that depict or describe sex or sexual organs in a manner appealing to, or intended to appeal to the average viewer/reader's visceral sexual (prurient) interests, and taken as a whole, lacks any justification from a political, literary, artistic, or scientific value.

29.    The Punta Gorda Code imposes civil fines for violation of the

Sign Code:

Section 9A-10. Citations

(c)    Unless otherwise expressly prescribed in the City's Code, the fine for a first offense of a violation to be enforced by means of a citation shall be $25.00; the fine for a second offense shall be $100.00; and all additional offenses shall be $250.00 per offense.  Code Compliance Officers shall have the discretion to issue a written warning instead of a citation for a first offense.

30.    Plaintiff's right to engage in political speech is infringed upon by the Punta Gorda Sign Ordinance.

## ENFORCEMENT OF SIGN CODE AGAINST PLAINTIFF

31.    On the evening of February 16, 2022, Plaintiff was engaged in political activism through the display of messages criticizing local and national politicians, causes and institutions.

32.    Plaintiff chose to project his messages on the side of the Charlotte Harbor Event Center using his laser projector.

33.    The Charlotte Harbor Event Center is a City-owned facility located at 75 Taylor Street, Punta Gorda, Florida.

34.    Plaintiff displayed the following messages on February 16, 2022:

"FUCK CODE NAZIS"

"FBI IS THE KGB"

"FUCK PAM DAVIS"[2]

"FUCK BILL PRUMMELL"[3]

"FUCK DESANTIS"

---

[2] Pamela Davis is the Chief of Police for Punta Gorda.

[3] Bill Prummell, Jr. is the Sheriff of Charlotte County, which includes the City of Punta Gorda.

"FUCK ABORTION"

"FUCK TRUMP"

"FUCK JOE BIDEN"

"FUCK THE FBI"

"FUCK THE MAYOR"

"FUCK THE COURTS"

"FUCK THE POLICE"

"SCHOOLS ARE LIKE PRISONS"

"FREE SPEECH"

"FUCK THE STATE ATTORNEY"

35.    Plaintiff's messages displayed through his laser projector on February 16, 2021 constitute pure political speech which is fully protected by the First Amendment.

36.    Each of those messages conveys a specific political statement which would be readily understood by Plaintiff's intended audience (being citizens and passersby within the City of Punta Gorda).

37.    By way of example, the display of the words "Fuck Joe Biden" conveys Plaintiff's intense opposition to Biden's policies as President.

38.    An average person would understand that "Fuck Joe Biden" was a political statement and would also understand from this message that Plaintiff opposes the President's policies.

39.    Even the less overtly political messages – such as "Schools Are Like Prisons"[4] – convey a message likely to be understood by the viewer.

40.    At the time Plaintiff displayed his messages, none of the individuals who were specifically identified in his messages was physically present.

41.    Punta Gorda police responded to the Event Center after receiving a citizen complaint about the content of Plaintiff's signs.

42.    The officers determined that Plaintiff's messages constituted an "indecent sign" and issued  civil citation #205240 to him for $200.00 for a repeat violation of Chapter 26-11.5(z) of the City's Codes. A copy of the civil citation is attached as Exhibit "3" to this Complaint.

---

[4] A message not unlike the thoughts expressed by Pink Floyd in their classic song "Another Brick in the Wall – Part II" (Waters, 1979):

> We don't need no education
> We don't need no thought control
> No dark sarcasm in the classroom
> Teacher, leave them kids alone
> Hey, teacher, leave them kids alone

43. The officers documented their encounter with Plaintiff and confirmed that the citation was issued because the content of Plaintiff's scrolling sign was deemed to be "indecent". A copy of the police report is attached as Exhibit "4" to this Complaint.

44. Plaintiff appeared before the Punta Gorda Code Enforcement Board on March 23, 2022 to challenge the citation issued for his February 16, 2022 sign.

45. The Code Enforcement Board determined that Plaintiff had violated "Chapter 9A, Section 9A-13 (c) 8, and Chapter 26 , Section 11.5 (z), of the Punta Gorda Code; for display of an indecent sign legible from the public right-of-way or within a public space."

46. The Code Enforcement Board upheld the citation and imposed a fine of $500.00 together with $10.28 for costs. A copy of the March 23, 2022 Order of the Punta Gorda Code Enforcement Board is attached as Exhibit "5" to this Complaint.

47. This is not the first time that Plaintiff has been cited and fined for violation of §11.5(z) for display of an indecent sign. On the contrary, Plaintiff has been repeatedly cited and fined under that provision

Citation 205071 - July 28, 2021 - $1,000.00 – Order recorded
at OR Book 4822, page 880, Charlotte County Public Records

Citation 205072 - July 28, 2021 - $500.00 – Order recorded at OR Book 4822, page 882, Charlotte County Public Records

Citation 205081 - July 28, 2021 - $500.00 – Order recorded at OR Book 4822, page 884, Charlotte County Public Records

Citation 205086 - July 28, 2021 - $500.00 – Order recorded at OR Book 4822, page 886, Charlotte County Public Records

48.    Plaintiff intends to continue to protest and display profane political messages like those displayed on February 16, 2022.

49.    Given Plaintiff's intention to continue his protest activities, it is a virtual certainty that the City will continue to apply the Sign Code against Plaintiff and will continue to cite and fine him for display of indecent signage.

50.    The Punta Gorda Sign Code is unconstitutional on its face and as-applied to the Plaintiff because it is a content-based restriction on Plaintiff's freedom of speech protected by the First Amendment.

51.    The Punta Gorda Sign Code is unconstitutionally vague on its face because the definitions of the terms "obscene" and "indecent" are so uncertain as to afford unbridled discretion to the City's authorities, which encourages arbitrary and capricious enforcement.

**ALLEGATIONS IN SUPPORT OF INJUNCTIVE RELIEF**

52.    Plaintiff's speech rights have been chilled now, and in the future, and he risks additional citations and fines if he continues to display the

political signs which he regularly features at his protests and demonstrations.

53.    Unless the ordinances, policies and practices of the Defendant City are enjoined by this Court, Plaintiff will suffer the continuing loss of his constitutional rights.

54.    Plaintiff has suffered irreparable injury and continues to suffer irreparable injury as a result of the Defendant's Ordinance, policies and practices.

55.    Plaintiff does not have a plain, adequate or complete remedy to protect his constitutional rights and to redress the wrongs and illegal acts complained of, other than immediate and continuing injunctive relief.

56.    Plaintiff has no adequate remedy at law. Deprivation of rights guaranteed under the Constitution is an irreparable injury for purposes of injunctive relief. In cases involving the loss of First Amendment rights, such as in this case, damages are both inadequate and unascertainable.

57.    The public interest would be served by the granting of injunctive relief. In fact, the public interest is disserved by ordinances, such as those of Defendant, which interfere with the public's rights guaranteed under the First and Fourteenth Amendments.

58.    A permanent injunction will preserve Plaintiff's civil rights and will minimize the need to award extensive compensatory damages.

## DAMAGES AND ATTORNEY'S FEES

59.    Because of the Defendant's actions, Plaintiffs' First and Fourteenth Amendment rights have been violated and Plaintiff is faced with similar and repeated violations of his rights in the future if he does not abandon his speech activities.

60.    Plaintiff has suffered economic losses as a result of the repeated code enforcement fines for violation of the indecent sign provision of the Sign Code and by the recording of those orders in the public record, all of which act as a lien against Plaintiff's real property, disparage his property rights and impugn his credit.

61.    Plaintiff has retained Benjamin, Aaronson, Edinger & Patanzo, P.A. as his attorneys to represent him in this action and has agreed to pay them a reasonable fee, which fee Defendant must pay pursuant to 42 U.S.C. §1988.

## COUNT I
### (Content-Based Regulation in Violation of the First Amendment)

62.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 61 of this Complaint and incorporates them herein by reference.

63.    This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201.

64.    Plaintiff is uncertain as to his rights and remedies under the Punta Gorda Sign Ordinance with respect to the Constitution of the United States.

65.    Plaintiff believes and herein alleges that the Sign Ordinance is unconstitutional on its face and as applied against Plaintiff.

66.    Section 11.5(z) of the Sign Ordinance, and the associated definitions (§§11.4(a)(20), (32) and (42)), discriminate on the basis of content without serving a compelling government interest through the least restrictive means.

67.    Section 11.5(z), and the associated definitions, are not time, place and manner restrictions because they do not govern the placement of signs or specify when and where they may be displayed. Neither do they impose physical standards or requirements for the display of signage

68.    Instead, §11.5(z), and the associated definitions, directly control the words and images which may be displayed on a sign regardless of where, when or how the sign is displayed, or how the sign is constructed.

69.    Under §11.5(z), Punta Gorda authorities must read the content of a sign in order to determine whether the text or graphics are lawful or unlawful under the City's Sign Code. Accordingly the law is content-based on its face. *See*, <u>Reed v. Town of Gilbert, Ariz.</u>, 576 U.S. 155, 163–64, 135 S. Ct. 2218, 2227 (2015) ("Government regulation of speech is content based if a law

applies to particular speech because of the topic discussed or the idea or message expressed. (citations omitted)  This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys.").

70.    Section 11.5(z) is not justified on the basis of anything other than the content of the speech displayed on a sign. *See*, Reed, 576 U.S. at 164, 135 S.Ct. at 2227 ("Our precedents have also recognized a separate and additional category of laws that, though facially content neutral, will be considered content-based regulations of speech: laws that cannot be [] 'justified without reference to the content of the regulated speech… Those laws, like those that are content based on their face, must also satisfy strict scrutiny.").

71.    Ordinance 1996-2021 sets forth the City's interests in adopting a sign ordinance, including the general "public health, safety and welfare" and a desire to "ensure public safety and aesthetic concerns". *See*, Ex. 1 at 1.

72.    The interests supporting the enactment of the Sign Code, including §11.5(z), are at best substantial and are not the sort of compelling interests which can justify a content-based infringement upon speech rights.

73.    Section 11.5(z), and the associated definitions, do not adopt the least restrictive means of regulating signs (and in the alternative, are not

narrowly tailored to serve the government's stated interests).

74.   Rather, §11.5(z) imposes a flat ban on broad categories of speech which are fully protected by the First Amendment, including Plaintiff's particular messages. A flat ban on speech is rarely if ever justified and cannot be justified at all in the context of the City's Sign Code.

WHEREFORE, Plaintiff prays for the following relief:

A.   That this Court take jurisdiction over the parties and this cause.

B.   That this Court enter a judgment declaring that §§11.5(z), 11.4(a)(20), (32) and (42) of the Punta Gorda Sign Ordinance are unconstitutional on their face, and as applied to Plaintiff because those provisions discriminate on the basis of content without serving a compelling government interest and without adopting the least restrictive means of regulation.

C.   That this Court enter a judgment for damages, both nominal and compensatory, sufficient to compensate the Plaintiff for violation of his right to freedom of expression.

D.   That this court award Plaintiff his recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.   That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT II

### (Violation of the First Amendment - Overbreadth)

75.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 61 of this Complaint and incorporates them herein by reference.

76.    This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201.

77.    Plaintiff is uncertain as to his rights and remedies under the Punta Gorda Sign Ordinance with respect to the Constitution of the United States.

78.    Plaintiff believes and herein alleges that the Sign Ordinance is unconstitutional on its face and as applied against Plaintiff.

79.    Section 11.5(z) of the Sign Ordinance, and the associated definitions (§§11.4(a)(20), (32) and (42)), are unconstitutionally overbroad because they impose a flat ban on a great swath of speech which is neither "obscene" nor "indecent" nor within the narrow scope of "fighting words" and which cannot be subject to content-based censorship.

80.    The overbreadth of §11.5(z) and the associated definitions is illustrated by their repeated application to Plaintiff's political speech, which is clearly protected by the First Amendment, and cannot be subject to fines and sanctions.

81.    The signs and messages which Plaintiff displays at his protests and demonstrations, including the messages projected on February 16, 2022, are profane but not indecent. In particular, the word "Fuck" was at no time used in a sexual context, but was employed as a means of expressing Plaintiff's strong political feelings.

82.    A comparable use of the word appears in the slogan "Russian Warship – Go Fuck Yourself" which has been widely reported as a statement of opposition to the Russian war in Ukraine and is considered to be a heroic expression rather than an indecent one.

83.    The City cannot ban speech which it deems to be "indecent". That is particularly true where that speech occurs in the context of a political demonstration. *See,* Sable Communications of California, Inc. v. F.C.C., 492 U.S. 115, 126 (1989) ("Sexual expression which is indecent but not obscene is protected by the First Amendment.").

84.    Plaintiff's signs and messages, while profane are not obscene under the Miller test which governs obscenity.[5]

---

[5] The current formulation of the Miller test includes the following prongs:

Whether the average person, applying contemporary community standards, would find that the work, *taken as a whole*, appeals to the *prurient interest*;

85.    The use of the word "Fuck" does not make a sign obscene and does not render an otherwise protected political message unlawful.

86.    No reasonable person could have believed that Plaintiff was referring to a sexual act when he incorporated the word "Fuck" into his political signage. For instance, Plaintiff was not suggesting that he wanted to engage in sexual intercourse with President Biden or the local State Attorney. To the contrary, Plaintiff was obviously using the word "Fuck" as an expletive intended to express his disdain for politicians and political entities. *Compare*, *See*, Cohen v. California, 403 U.S. 15, 20, 91 S. Ct. 1780, 1785 (1971) (Jacket bearing the words "Fuck the Draft" could not be considered obscene: "Whatever else may be necessary to give rise to the States' broader power to prohibit obscene expression, such expression must be, in some significant way, erotic. (citation omitted). It cannot plausibly be maintained that this vulgar allusion to the Selective Service System would conjure up such psychic

---

Whether the work, applying contemporary community standards, depicts or describes, in a patently offensive way, sexual conduct specifically defined by applicable state law; *and*

Whether a reasonable person would find that the work lacks serious literary, artistic, political, or scientific value.

Miller v. California, 413 U.S. 15, 24, 93 S.Ct. 2607, 2614–15 (1973); Smith v. United States, 431 U.S. 291, 300 n. 6 (1977); Pope v. Illinois, 481 U.S. 497, 500-01 & n. 3 (1987).

stimulation in anyone likely to be confronted with Cohen's crudely defaced jacket.").

87.    Section 11.5(z) is unconstitutionally overbroad because the ban on indecent signage applies not only in locations where children frequent – such as schools – but to any place where children *might* be:

> (z)    Any sign…. which can potentially be viewed by children under the age of 17.

88.    No children were alleged to have been present when Plaintiff displayed his profane political messages.[6] Even had children been present, that fact would not serve to diminish Plaintiff's right to speak freely on political subjects of his choosing using his preferred language. *See*, Reno v. ACLU, 521 U.S. 844, 875, 117 S. Ct. 2329, 2346 (1997) ("[T]he Government may not "reduc[e] the adult population ... to ... only what is fit for children."); Erznoznik v. City of Jacksonville, 422 U.S. 205, 210–11, 95 S. Ct. 2268, 2273 (1975) (Burden is on the offended or sensitive viewer to "avert his eyes" from the offensive speech); Cohen v. California, 403 U.S. at 21, 91 S.Ct. at 1786 ("Of course, the mere presumed presence of unwitting listeners or viewers

---

[6] The police report for the February 17, 2022 merely speculates that Plaintiff's projected messages "can potentially be viewed by children under the age of 17). See, Exhibit 4 at 4.

does not serve automatically to justify curtailing all speech capable of giving offense.").

88.    Furthermore, the definition of obscenity in §11.4(42) does not track the Miller test and does not incorporate all of the constitutional protections required to distinguish obscenity from protected speech. In addition to misstating the prurient interest requirement, the City's definition makes no reference to community standards, inserts the "taken as a whole' language in the wrong place,[7] and it does not incorporate state statutory law.

89.    The City has not previously alleged that Plaintiff's profane political signs constitute "fighting words" nor could that be true under controlling law.

90.    Plaintiff's speech cannot be fighting words as none of the targets of his political signs was present to be offended. Therefore, even if the language rose to the level of "fighting words" (which it did not), there was no imminent threat of incitement. *See*, Cohen v. California, 403 U.S. at 20, 91 S.Ct. at 1785–86 (Jacket bearing the words "Fuck the Draft" could not be fighting words because "[n]o individual actually or likely to be present could

---

[7] Under Miller, the "taken as a whole" requirement appears at the beginning of the test and modifies the "prurient interest" prong rather than the "serious value" prong.

reasonably have regarded the words on appellant's jacket as a direct personal insult.").

91.    The City has no legitimate interest in regulating speech which is merely "indecent".

92.    The City has no legitimate interest in regulating indecent signs based on their content.

93.    The City has no legitimate interest in prohibiting political messages such as Plaintiffs.

94.    The prohibition against indecent or obscene signs, and those including fighting words, as defined in the Sign Ordinance, reach a substantial amount of controversial, profane and confrontational signs, all of which display messages protected the First Amendment.

95.    The prohibition against indecent or obscene signs, and those including fighting words, as defined in the Sign Ordinance, are substantially overbroad as they will chill a great deal of political and other socially important speech, including Plaintiff's.

WHEREFORE, Plaintiff prays for the following relief:

A.    That this Court take jurisdiction over the parties and this cause.

B.    That this Court enter a judgment declaring that §§11.5(z), 11.4(a)(20), (32) and (42) of the Punta Gorda Sign Ordinance are

unconstitutional on their face because they are substantially overbroad and impermissibly outlaw and chill protected speech.

C.    That this Court enter a judgment for damages, both nominal and compensatory, sufficient to compensate the Plaintiff for violation of his right to freedom of expression.

D.    That this court award Plaintiff his recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.    That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

## COUNT III

### (Void for Vagueness)

96.    Plaintiff realleges each and every allegation set forth in paragraphs 1 through 61 of this Complaint and incorporates them herein by reference.

97.    This is an action for declaratory relief pursuant to Title 28, U.S.C., §2201.

98.    Plaintiff is uncertain as to his rights and remedies under the Punta Gorda Sign Ordinance with respect to the Constitution of the United States.

99.    Plaintiff believes and herein alleges that §§11.5(z) of the Punta Gorda Sign Ordinance, and its associated definitions (§§11.4(a)(20), (32) and (42)) are unconstitutionally vague on their face and as applied in practice.

100.    The City treats the definitions of "obscene", "indecent speech" and "fighting words" as specifically-defined terms of art and does not rely on common understandings or dictionary definitions of those words.

101.    The definitions of "obscene", "indecent speech" and "fighting words" found in §§11.4(a)(20), (32) and (42) are idiosyncratic as they do not track the established legal definitions or understandings of those terms. Plaintiff alleges the following particulars:

A.    Section 11.4(a)(42) does not track the <u>Miller</u> test for obscenity and does not incorporate all of the constitutional protections required to distinguish obscenity from protected speech. In addition to misstating the prurient interest requirement, the City's definition makes no reference to community standards, inserts the "taken as a whole" language in the wrong place, and does not incorporate state statutory law.

B.    "Indecent speech", as defined by §11.4(a)(32) is not a category of speech which can be prohibited or penalized in public fora and incorporates a content-based standard – "offensiveness" – which is both vague and unconstitutional.

C.     The definition of "fighting words" found in §11.4(a)(20) allows an enforcing officer to fine a speaker based on "defamatory remarks" which does not accord with Supreme Court standards.

102.   The descriptions of signs prohibited by §11.5(z) (i.e. those defined in §§11.4(a)(20), (32) and (42) of the Sign Ordinance) do not provide sufficient guidance to citizens of common intelligence to determine what messages are or are not unlawful.

103.   The descriptions of signs prohibited by §11.5(z) (i.e. those defined in §§11.4(a)(20), (32) and (42) of the Sign Ordinance) do not constrain the discretion of authorities charged with enforcing the law and allows for arbitrary and capricious enforcement.

104.   In practice, City law enforcement and code enforcement officers appear to concentrate entirely on the word "Fuck" – with or without context - when determining whether a sign is prohibited under §11.5(z).

105.   The following phrases all communicate precisely the same message and that precise message would be understood by almost all literate English speakers:

| | |
|---|---|
| Fuck Joe Biden | Let's Go Brandon |
| F*ck Joe Biden | F 😝 ck Joe Biden |
| Phuk Joe Biden | |

106.   The same precise concept would also be communicated by the words "Chingar Joe Biden" although that particular phrasing would only be understood by Spanish speakers – of whom there are many within the City of Punta Gorda.

107.   With the exception of the message "Fuck Joe Biden", Plaintiff is unable to determine which, if any, of his messages would be permissible under the Punta Gorda Sign Ordinance and which would subject him to fines.

108.   The City has adopted no policies or administrative constructions which would further define the terms used in §11.5(z) or which would serve to further identify those signs which are prohibited under that provision.

WHEREFORE, Plaintiff prays for the following relief:

A.   That this Court take jurisdiction over the parties and this cause.

B.   That this Court enter a judgment declaring that §§11.5(z), 11.4(a)(20), (32) and (42) of the Punta Gorda Sign Ordinance violate the First and Fourteenth Amendments because they are unconstitutionally vague on their face and as applied to the Plaintiff.

C.   That this Court enter a judgment for damages, both nominal and compensatory, sufficient to compensate the Plaintiff for the past arbitrary enforcement of those provisions.

D.    That this court award Plaintiff his recoverable costs, including reasonable attorney's fees pursuant to 42 U.S.C. §1988.

F.    That this Court award Plaintiff all other relief in law and in equity to which he may be entitled.

*Respectfully submitted,*

BENJAMIN, AARONSON,
EDINGER & PATANZO, P.A.

_/s/  Gary S. Edinger_

| | |
|---|---|
| DANIEL R. AARONSON, Esquire | GARY S. EDINGER, Esquire |
| Florida Bar No.: 314579 | Florida Bar No. 0606812 |
| 1700 East Las Olas Blvd., Suite 202 | 305 N.E. 1st Street |
| Ft. Lauderdale, Florida 33301 | Gainesville, Florida 32601 |
| (954) 779-1700 (Fax) (954) 779-1771 | (352) 338-4440  (Fax) (352) 337-0696 |
| danaaron@bellsouth.net | GSEdinger12@gmail.com |

*Attorneys for Plaintiff*